ANDERSON, Justice
(concurring).
I agree with the court that the respondents are not collaterally estopped from seeking benefits in no-fault arbitration after .litigating damages for the same economic loss • in a negligence action. Therefore, I -would affirm with respect to respondent Foss. I also - concur in the court’s opinion with respect to respondent Lennartson, but write separately because the court’s opinion substantially understates the effect of .the decision we announce today.
It is undisputed that Lennartson received a double recovery. Lennartson, candidly and appropriately, does not deny the obvious and admits this fact. Because I conclude that-Lennartson is also correct that there is no statutory or case law bar to recovery here, I write separately to note the serious complications and pitfalls that necessarily follow from that conclusion.
- Lennartson was injured in a motor vehicle accident in 2008. After reimbursing some of Lennartson’s medical expenses, appellant State Farm discontinued her benefits following an independent medical evaluation. Instead of availing herself of the remedies afforded by the No-Fault Act, Lennartson sued the tortfeasor and obtained a jury award that included damages for all past medical expenses. Thereafter, Lennartson commenced arbitration against State Farm and was awarded no-fault benefits for the same medical ex *538 penses, she had already recovered from the tortfeasor in the negligence action. This scenario is not anticipated by the Minnesota No-Fault Automobile Insurance Act (“No-Fault Act”).
Although the result here is counter-intuitive and not necessarily reasonable, I generally agree that Lennartson has suffered a .compensable loss under the no-fault statute and our precedent. The No-Fault Act states that “[b]asic economic loss benefits provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle,” including up to $20,000 for medical expenses. Minn; Stat. §. 65B.44, subd. 1(a) (2014). A no-fault insurer is required to pay basic economic loss benefits “as loss accrues,” which occurs when an expense “is incurred.” Minn.Stat. § 65B.54, subd. 1 (2014). Lennartson undoubtedly suffered a compensable loss when she required medical treatment following her automobile accident in 2008, ■ and that loss became payable by State Farm when the medical expenses were “incurred” — i.e., when Lennartson received her bill from the medical service provider. As the court notes, the result here is generally supported by our case law, which has allowed duplicative recoveries not barred by statute. Do v. Am. Family Mut. Ins. Co., 779 N.W.2d 853 (Minn.2010); Stout v. AMCO Ins. Co., 645 N.W.2d 108, 113 (Minn.2002).[1]
I write separately, however, because the result in this case is inconsistent with the purposes of the No-Fault Act, Minn.Stat. § 65B:42 (2014). One such purpose is “to provide offsets to avoid duplicate recovery.” Minn.Stat. § 65B.42(5). There is no evidence in the record, and Lennartson cites none, that either the Legislature or our court ever contemplated that an insured would forego the “prompt payment” afforded by, the No-Fault Act, see Minn. Stat. § 65B.42(1), (3), and first seek recovery directly from the tortfeasor.[2] The structure of the No-Fault Act supports the opposite implication — that an injured party should look first to the No-Fault Act for compensation — because an injured party who receives no-fault benefits for medical expenses and wage loss is not permitted to recover tort damages unless certain thresholds are reached. See Minn.Stat. § 65B.51, subds. (1), (3) (2014).[3]
Incentives matter, and today’s ruling creates incentives that are inconsistent with the legislature’s intent. The court’s opinion will make litigation against the *539 tortfeasor in the first instance an appealing option, rather than the last resort, for an injured plaintiff. The result here means more litigation seeking recovery of expenses from motor vehicle accidents. At a minimum, this will impair the. No-Fault Act’s objectives of “provid[ingl prompt payment of specified basic economic loss benefits,” “speeding] the administration of justice,” and “easting] the burden of litigation on the courts of this state.” See MinmStat. § 65B.42(1), (4). "
To make matters worse, only those with the financial means to forego a prompt payment of benefits will benefit from this rule. Indeed, Lennartson did not recover in the negligence action until 2012, over 4 years after the motor vehicle accident. Thus, the court’s framework does nothing to “relieve the severe economic distress of uncompensated victims.” Minn.Stat. § 65B.42(1). Instead, the result here creates an opportunity for litigants to abuse the no-fault system, and that abuse, in turn, will drive up insurance policy premiums for those the No-Fault Act was designed to protect.
The No-Fault Act was enacted by the Legislature to address the “detrimental impact of automobile accidents on uncompensated injured persons [and] upon the orderly and efficient administration of justice in this state.” Minn.Stat. § 65B.41. Thus, it is for the Legislature to address the complications and problems that will flow from the statutory language that the Legislature adopted.
Accordingly, I concur in the court’s opinion as it relates to the Lennartson claims.

. The precedential value of these two cases is questionable. Do was decided under the col, lateral-source statute, not the No-Fault Act. 779 N.W.2d at 860. Stout did not involve the manipulation of the order of events by "an interested party and concerned the, coordination of benefits; here, a negligence award is at issue. 645 N.W.2d at 109 — 11, 113.

. In fact, two of the leading treatises on no-fault litigation in Minnesota suggested barri- . ers to the recovery awarded here. See Paul F. McEllistrem, No-Pault Benefits: An Overview, in Minnesota Motor Vehicle Accident Deskbook 23-46 (Michael R. Fargione and Paul F. McEllistrem eds., 4th ed., 2009 & Supp. 2013) ("If a jury does not award damages for past medical expenses or past wage loss, general principles of estoppel would prevent a claimant from obtaining those damages against the no fault insurer. If a jury does ¿ward damages for past medical or wage loss, a no-fault claim would typically not exist for those same damages because this would provide a duplicate recovery.”); Theodore J. Smetak et al., Tort Actions, in Minnesota Motor Vehicle Insurance Manual 219 (3d ed. 2000) ("Although [prior precedent] only address [es] future medical expense and wage loss, the rule should apply in other cases where plaintiff has been compensated for other expenses or losses that are identical to those benefits the claimant would be able to recover in the future from the no-fault insurer.”).

.The statutory threshold is not at issue here because, among other things, it is undisputed that the medical bills exceeded the minimum statutory threshold.